**Donald HACKWORTH, Appellant,**

v.

**Kenneth HACKWORTH; Kentucky Farm Bureau Mutual Insurance; Edwin Hensley, Jr.; State Farm Mutual Insurance Company; Bluegrass Towing; and Donald R. Whitley, Appellees.**

No. 93–CA–001103–MR.

Court of Appeals of Kentucky.

April 28, 1995.

Richard M. Rawdon, Jr., Rawdon & Brady, P.S.C., Georgetown, for appellant.

Thomas Bruce Bell, Fowler, Measle & Bell, Lexington, for appellees Hackworth and Kentucky Farm Bureau Mut. Ins.

Oscar H. Geralds, Jr., Geralds, Moloney & Jones, Lexington, for appellees Hensley and State Farm Mut. Ins. Co.

John Gary McNeill, Landrum & Shouse, Lexington, for appellees Bluegrass Towing and Donald R. Whitley.

Before COMBS, DYCHE and HUDDLESTON, JJ.

HUDDLESTON, Judge.

Donald Hackworth was involved in two separate motor vehicle accidents on the same day. Claiming that he was injured, he sued the drivers of the vehicles involved and the employer of one of the drivers. A Fayette Circuit Court jury found both drivers negligent and Donald Hackworth free of negligence. Even so, the jury refused to award damages against either driver. Hackworth appeals on the ground that the trial court erroneously allowed a portion of an administrative law judge's opinion to be read to the jury. The opinion attributed Hackworth's disability to an injury sustained in the course of his employment. Hackworth also complains that the trial court's instruction to the jury on damages was misleading. He concludes by arguing that the jury's verdict was given in disregard of the evidence.

On October 7, 1987, Hackworth was riding with his cousin, Kenneth Hackworth, to work. The automobile collided in Fayette County with another vehicle driven by Edwin A. Hensley, Jr. Hackworth sued both drivers. Later that day, Hackworth was riding in a tow truck in Powell County. Bluegrass Towing, Inc. owned the truck and Donald R. Whitley was driving it when it, too, was involved in an accident. He sued Whitley and the towing company.

Hackworth went back to work as a drywall hanger after the accidents until September 6, 1988, when he had an anterior cervical diskectomy and fusion performed on his C5/6 and C6/7 discs. Hackworth then worked from June until October 1989. Hackworth applied for and was awarded social security disability benefits which he began receiving in 1990.

Prior to the trial of Hackworth's negligence lawsuit, Janet Dingman, a licensed

professional therapist, was deposed. At the behest of the Social Security Administration, she attended and testified at Hackworth's social security hearing. Subsequently, she was contacted by counsel for Donald Hackworth and employed to testify as an expert. During her deposition, counsel for Kenneth Hackworth asked:

Q.5 Are you aware that the Social Security decision—have you read that?

A. No, I don't read the decisions. The only time I ever see a decision is if the case has been remanded or sent back somehow and the person is turned down and comes up again a second time, but I don't read decisions now.

Q.6 Would you mind if I read you part of the decision here, on Page 5 of the decision, it says in part, "The Administrative Law Judge finds that the claimant's pain syndrome which shall be seen as the disabling factor, arose as a consequence of the claimant's return to a very heavy level of work involving the use of his head to support dry wall, and not as a result of the claimant's original motor vehicle accidents or the surgery; accordingly, it is concluded that the claimant's pain became manifested at the disabling level only as his original onset date of October 31, 1989, when he became unable to continue working." Would you disagree with that decision?

Dr. Dingman responded:

A. I really have no basis to argue one way or another. I really don't know.

Hackworth moved pursuant to Ky.R.Evid. (KRE) 103(d) to preclude the portion of Dingman's deposition giving the ALJ's determination from being read to the jury. The motion was denied.

During his opening statement, counsel for Donald Hackworth, apparently seeking to defuse the issue, alluded to Hackworth's social security benefits, and on direct examination Hackworth explained that he was drawing social security benefits.[1] During Hackworth's case-in-chief, Dingman's deposition

was read to the jury. Over the renewed objection of Hackworth's counsel, the court permitted the jury to hear the question and answer about the ALJ's decision. Hackworth argues that this was error because it was not relevant, is prejudicial, is an opinion on an ultimate fact and is hearsay. We agree that the court erred in admitting the statement, but for different reasons.

■ The witness through whom the ALJ's opinion was introduced had no familiarity with it whatever. She had not read it and could not identify it as the opinion of the ALJ. The record is devoid of other attempts to authenticate the opinion. The Kentucky Rules of Evidence provide that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. While evidentiary rules now allow virtually any relevant evidence to come in without some formerly required formalities, there are, nevertheless, *some* requirements relating to the authentication of documents that must be met. KRE 901. Authentication requires that the proponent of a document offer "evidence sufficient to support a finding that the matter in question is what its proponent claims." KRE 901(a). No evidence was produced that the portion of the ALJ's opinion read to the jury is what it purports to be. The witness who was asked about it could not authenticate the opinion. As a result, the court erred in allowing the jury to hear any part of the opinion.

In the past it has generally been the rule that:

[T]he record of the former suit cannot be introduced to establish the facts on which it was rendered, yet there are, in addition to the exceptions referred to, certain incidental purposes for which such records may be introduced. A judgment may be offered in evidence for two purposes: 1. To establish the mere fact of its own rendi-

---

1. After *O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571 (1995), the admissibility of evidence concerning Hackworth's social security disability benefits is questionable. The Kentucky Supreme Court ruled that the statute which made collateral source payments admissible, Ky.Rev.Stat. (KRS) 411.188, was unconstitutional. We leave for another day the determination of whether or not social security benefits are payments made by a collateral source.

tion and the legal consequences which result from that fact; 2. In addition to the first purpose, for the further purpose of proving some other fact as found by that verdict or upon whose supposed existence the judgment is based.

*Diamond v. New York Life Ins. Co.,* 50 F.2d 884, 885 (7th Cir.1931). Furthermore, while "[a] judicial record is always admissible to prove the fact that a judgment has been rendered, the time of its rendition and the terms and effect of the judgment ... the record may not be introduced to establish the facts on which a judgment was based." *Scott v. Scott,* 554 S.W.2d 274, 277 (Tex.Civ.App. 1977). Since these cases have been decided, the rules of evidence have been modified. In *United States v. Paducah Towing Co. Inc.,* 692 F.2d 412, 420 (6th Cir.1982), the court held that an "ALJ's findings of fact are admissible as factual findings." The court went on to say that [a]lthough a finding that actions were reasonable is somewhat conclusory, we do not believe that such a label is controlling. In our view, a finding that amounts to an inference drawn from subsidiary findings is admissible under Rule 803(8)(C)." [2] (Citations omitted.)

■ On remand, if the ALJ's opinion is offered into evidence and properly authenticated, it is admissible. It is relevant because it goes to the issue of whether Hackworth was injured by the automobile accidents or some other process. Although it is hearsay, it qualifies as an exception under KRE 803(8), public records. Hackworth claims that the portion of the ALJ's opinion is prejudicial to him. This can only be true if the opinion was not properly rendered. Finally, Hackworth says that the opinion gives a conclusion about the ultimate issue before the jury. While this decision comes from an administrative agency, rather than a court, the agency was acting in a judicial capacity and the opinion is in the nature of a judicial decision. Judgments necessarily deal with

the ultimate issue, but as *Paducah Towing* explains, that does not make the ALJ's opinion inadmissible.

■ Hackworth challenged the trustworthiness of the ALJ's opinion in his motion in limine because the ALJ did not have the benefit of testimony from the three doctors who testified in the negligence trial. If the ALJ's opinion is offered in evidence on remand and is properly authenticated, the trial court should conduct a hearing on the trustworthiness of the opinion. The burden of proving untrustworthiness falls on Hackworth.

As we are remanding this case, we believe a better instruction can be found on the issue of damages. While the instruction used was not the best possible one, when read as a whole, it does not violate the rule of *Drury v. Spalding,* Ky., 812 S.W.2d 713 (1991). Although the instruction issue alone does not prompt us to reverse this case, we note that according to *Rietze v. Williams,* Ky., 458 S.W.2d 613, 621 (1970), "it is not advisable to instruct negatively."

In light of the fact that we are reversing this case because the ALJ's opinion was not authenticated, there is no need to address Hackworth's contention that the jury's verdict was contrary to the evidence.

The judgment is reversed and this case is remanded to Fayette Circuit Court for further proceedings.

COMBS, J., concurs.

DYCHE, J., concurs in result.

---

**2.** Federal Rules of Evidence (FRE) 803(8)(C) is      the equivalent of KRE 803(8).